[Civ. No. 2193.  Fourth Appellate District.—December 19, 1938.]

SOUTHERN CALIFORNIA EDISON COMPANY, LTD. (a Corporation), Respondent, v. WILLIAM B. GEMMILL et al., Appellants; SOUTHERN CALIFORNIA EDISON COMPANY, LTD. (a Corporation), Respondent, v. CLARENCE W. SMITH et al., Appellants; SOUTHERN CALIFORNIA EDISON COMPANY, LTD. (a Corporation), Respondent, v. IDA C. WANAMAKER et al., Appellants; SOUTHERN CALIFORNIA EDISON COMPANY, LTD. (a Corporation), Respondent, v. MYRON F. PERSONS et al., Appellants; SOUTHERN CALIFORNIA EDISON COMPANY, LTD. (a Corporation), Respondent, v. JESSE H. CLARK et al., Appellants.

Hill, Morgan & Bledsoe, Vincent Morgan and Stanley S. Burrill for Appellants.

Roy V. Reppy, B. F. Woodard, Victor E. Koch and Guthrie & Curtis for Respondent.

BARNARD, P. J.—The plaintiff brought five separate actions in eminent domain to acquire an easement 150 feet in width across the properties of the respective defendants for the purpose of constructing, maintaining and operating electric power lines, with the usual right of ingress and egress in connection with such construction, maintenance and operation. The five causes were consolidated for trial and tried before the same court and jury. Verdicts were returned fixing the compensation to be awarded to the respective defendants, covering both the value of the easement sought to be condemned and the severance damage. Findings of fact and an interlocutory judgment were entered in

each case. Thereafter, a motion for a new trial was granted in each case, upon the ground of the insufficiency of the evidence to sustain the verdict and judgment, such new trial to be solely upon the issue as to the amount of the compensation to be paid. The defendants, respectively, have appealed from these orders granting a new trial, and all five appeals have been presented upon one record and one set of briefs.

The evidence shows that the lands of the appellants over which these power lines were to be erected were ordinary farming lands near Chino; that some parts thereof were badly sanded up from shifting sands; that the properties were used and would in all probability continue to be used for farming purposes; and that, except where the footings for respondent's towers were to be located, the lines to be constructed would be some 40 feet above the ground and would cause little or no interference with the use of the lands below them for normal farming operations. Four of the respective owners of the lands testified as to the value of the easement sought and the severance damage with respect to his particular land, the total amounts being, respectively, $23,220, $24,485, $22,967.50 and $68,672. The fifth owner did not testify in this regard. The appellants produced two expert witnesses and the respondent five. The highest and lowest figure given by each of these sets of expert witnesses and the verdict with respect to each of the five causes, are reproduced in table below.

| "Defendant | Appellants' Range | Respondent's Range | Verdict |
|---|---|---|---|
| Clark | $15,000–$15,100 | $2,200–$2,870 | $ 9,032.00 |
| Smith | 12,500– 13,800 | 1,000– 1,500 | 5,954.85 |
| Persons | 7,500– 7,900 | 500– 750 | 2,065.25 |
| Gemmill | 10,000– 10,600 | 1,250– 1,600 | 4,150.40 |
| Wanamaker | 20,000– 21,000 | 3,000– 4,065 | 12,389.96" |

In spite of the well-known generosity of juries in actions of this nature, it is at once apparent that the jury was unwilling to go to the length of accepting the testimony of appellants' experts as to the amount of damage to these properties and, in short, that it did not believe that testimony. It would likewise appear that it did not believe the respondent's evidence in this connection. In any event, a well-defined duty rested upon the trial court in passing upon the motions for a new trial.

In *Fisher* v. *Zimmerman*, 23 Cal. App. (2d) 696 [73 Pac. (2d) 1243], this court said:

"The position occupied by a trial judge in passing on a motion for new trial made on the ground of insufficiency of the evidence to sustain the verdict and judgment has been likened to that of a thirteenth juror. He should review all the evidence, weigh its sufficiency, and judge the credibility of the witnesses. He may believe, and accept, in whole or in part, the testimony of any witness which he concludes is true. He may reject any evidence which he believes to be false. He may draw reasonable inferences from the evidence. In so doing he is at liberty to disregard the findings of the jury which are implied from the verdict."

In *Baker* v. *Board of Trustees, etc.*, 133 Cal. App. 243 [23 Pac. (2d) 1071], the court said:

"The amount of damages is committed to the sound discretion of the jury, and next, to the discretion of the judge of the trial court who, in ruling upon the motion for a new trial, may consider the evidence anew and set aside the verdict if it is not just."

In *Drathman* v. *Cohen*, 139 Cal. 310 [73 Pac. 181], it is said:

"In the granting of new trials, the trial court has much discretion in considering whether or not the evidence justifies the verdict. Its duty is to grant the new trial whenever, upon the whole case, it believes that injustice has been done in that respect."

In *Buck* v. *Borchers*, 203 Cal. 210 [263 Pac. 226], the court said:

"This court has recently stated in *Rosenberg* v. *Moore*, 194 Cal. 392, 393 [229 Pac. 34], that if there is a substantial conflict in the evidence the trial court will not be deemed to have abused its discretion when it has determined that the verdict or finding is against the weight of the evidence and that there should be a new trial. It is useless to cite further authorities for a proposition of law as well settled as is the one applicable here."

While the appellants concede these rules they contend that the court here abused its discretion, since there was no substantial conflict in the evidence, for two reasons.

The first of these contentions is based upon the fact that at the trial the respondent admitted the qualifications

of the two experts offered by the appellants, to testify as expert witnesses on the question of damages in these cases, and the court remarked that under the admission it had been stipulated that these witnesses possessed the highest possible type of qualifications. It is argued that the respondent's expert witnesses were comparatively inexperienced as to the issues in these particular cases and much argument is set forth going to the weight that should be given to their testimony. It is not only argued that appellants' experts were more worthy of belief, but that "when two expert witnesses, whose qualifications are conceded to be of the highest character humanly possible, express opinions as to the market value of the property in amounts in excess of the verdict of the jury, how can it be said that the difference between their opinions and others constitutes a conflict in the evidence as to matters of fact?" It is further argued that "the evidence as to the facts was not conflicting, the only conflict being in the expression of an opinion as to value" While an expert is allowed to give his opinion, contrary to the usual rule, his opinion, when given, is neither more nor less than evidence which is to be weighed and considered like any other evidence in the case, and a conflict between the opinions of two experts constitutes a conflict in the evidence. While the respondent admitted the qualifications of the appellants' two witnesses to testify as experts on the issue of damages in these cases it did not stipulate that their testimony was to be taken as conclusive, and the question of their credibility and the weight that should be accorded their testimony remained to be considered by the jury and, later, by the court in passing upon the motions for a new trial. The summary above given of the testimony of the various witnesses as to the amounts of damage to these respective properties clearly shows not only that a conflict existed but that this conflict in the evidence was most substantial.

It is next contended that no conflict in the evidence appears because the jury was taken out to view the lands in question and shown the location of the proposed right of way and the trial judge did not accompany the jury when such inspection of the premises was made. It is argued that what was there seen by the jury was evidence in the case; that this evidence was not available to the judge; that the court granted the motions for a new trial upon the ground of the insufficiency of the evidence without having before it

all of the evidence that was before the jury; that it must be presumed that the physical evidence seen by the jury was sufficient to support the verdicts; and that it follows that there could have been no conflict in the evidence. Assuming all that we are asked to assume and that what was seen by the jury was sufficient to support the verdicts this would but add to the conflict which appears in the evidence. We then have three widely varying sets of figures relating to the issue of the amount of damages in these cases and the duty still rested upon the trial judge to pass upon the question of a new trial under the established rules above set forth. Viewed from any standpoint it must be held that a most substantial conflict in the evidence existed and it in no way appears that the court abused its discretion in granting the motions for a new trial. (*Koyer* v. *McComber*, 12 Cal. (2d) 175 [82 Pac. (2d) 941].)

The respective orders granting a new trial are affirmed.

Marks, J., and Griffin, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 16, 1939.