[Civ. No. 14589. Second Dist., Div. Two. Mar. 29, 1945.]

H. W. EVERTS, Respondent, v. C. A. MATTESON et al., Defendants; RAYMOND H. VANDERBUSH et al., Appellants.

A. P. G. Steffes for Appellants.

McLaughlin & McGinley for Respondent.

MOORE, P. J.—In this action to recover the deficiency on a note after sale of the property pursuant to the deed of trust given as security for the obligation, the only contentions relied upon for reversal arose out of the court's rulings upon offers of evidence on the trial of the issues as to the value

of the property at the time of the sale. This is the second appeal, the first judgment having been reversed because of its error in denying to appellants, as purchasers of the property from the trustors, the benefits of section 580a Code of Civil Procedure. That section limits the amount of a recoverable deficiency to the difference between the entire amount of the indebtedness at the time of the sale and the fair market value of the property at the same time. See 21 Cal.2d 437 [132 P.2d 476] where the facts are fully stated.

Appellants complain that their offer to prove that the bank had in its files an appraisal of $35,000 made for the bank December 12, 1935, was erroneously rejected. They contend that the bank having carried such appraisal through 1938, its record was admissible as a declaration against interest. They sought to accentuate the value of the document by offering to show that such appraisal had resulted from the reduction of a former valuation in the sum of $51,000. ■ A communication from a person who has been employed to appraise a parcel of realty is not a corporate record (Civ. Code, § 371) nor is it admissible because his employer has it among his papers. ■ Both offers were properly rejected as having been too remote from the date of the sale. The correctness of that ruling is readily apprehended by anyone acquainted with the vacillations of realty values and with their rapid depreciation due both to decay of improvements and to the demands for improved facilities or to new architectural trends.

■ The Lichtenberger appraisal was properly rejected. While the document declares the amount of the deceased appraiser's valuation, he had omitted therefrom the recital required by the statute, to wit, that he had "truly, honestly and impartially appraised the property." (Code Civ. Proc., § 580a.) An objection based upon such omission had been made at the former trial. Mr. Lichtenberger having thereafter deceased, it was incumbent upon appellants to rely upon other experts, as they did, or to procure the appointment of another inheritance tax appraiser who might be available for cross-examination. Inasmuch as "any party" may cross-examine such appraiser his report was not admissible under the circumstances. Even though it had been admitted, the statute does not require the court to appropriate the valuation fixed by the inheritance tax appraiser as its finding of value. ■ Where it is properly admitted such appraisal is to be considered

merely as one item of evidence and is not a prerequisite to a determination by the court of the value to be found. The court is required merely to find the market value "as of the time of sale" and this may be based upon all of the evidence before the court. ■ The vice in appellants' argument that the court should upon appellants' motion have appointed another inheritance tax appraiser to make a report during the trial lies not only in the law that such a report is not a *sine qua non* to a finding of value but also in the fact that appellants made no showing to warrant such indulgence. Their counsel had in April moved to fix the date of trial. He left Los Angeles on August 13 on other matters, returning one week later. He stated that he "had intended" to have the appraiser in court and had always known Mr. Lichtenberger to be available when needed. Counsel chose to proceed upon such assurance and permitted the day of trial to arrive without attempting to ascertain the whereabouts of the expert. That fact he first learned on August 20. With five days remaining before the commencement of the trial, he made no effort to procure a substitute for the deceased witness. Nor did he finally move until the second day of the trial and after four expert witnesses had given their separate opinions as to value. No good reason was shown why appellants should have been permitted to bolster the evidence of their two witnesses by a last minute demand for the appointment of another inheritance tax appraiser as suggested by section 580a.

■ One Craighead, called as a witness on behalf of appellants, had inspected and appraised the property in March, 1939. He testified that its value then was $21,600, which sum was derived by observing some conditions of the building and that "the nature of the building is not conducive to good maintenance." Here was no appraisal of the property as of the date of sale. It was incumbent upon appellants to prove that there had been no change between the dates of sale and of Craighead's inspection. On cross-examination the witness disclosed that at the time he had derived the value of $21,600 he had no knowledge of the prices or of any sales in the vicinity and that he had no information regarding sales other than the facts reported to him by another. He had not learned whether a recent earthquake had damaged the building nor had he consulted the office of the city engineer with reference to essential repairs. While he had, as employee of the assessor, fixed the value of the improvements at $4,310 for 1939, the

total of his knowledge of value of the realty had been supplied by the witness Scott whose appraisement of the ground was $13,000. Besides such information and his own inspection Craighead had no other facts from which to fix the reasonable market value at $21,600. In the absence of proof of change of condition between June, 1938, and March, 1939, his opinion was properly excluded. ██ In order to qualify as an expert on the value of real estate one must have a knowledge of the intrinsic properties and of the state of the market, that is, the general selling price of neighboring lands at the time. (3 Jones Commentaries (2d ed.), p. 2495.) ██ An expert must confine his testimony to his own personal observations and must eliminate from his consideration the findings of another. (*Maggart v. Bell,* 116 Cal.App. 306 [2 P.2d 516].) The authorities cited by appellants to the effect that it is proper to admit the testimony of an expert with only slight qualifications (*Lutz* v. *Allegheny County,* 327 Pa. 587 [105 A. 1]; *Davis* v. *Southern Surety Co.,* 302 Pa. 21 [153 A. 119]; *Delaware & C. Steam Towboat Co.* v. *Starrs,* 69 Pa. 36; *Yorkshire Worsted Mills* v. *National Transit Co.,* 28 Del.Co. 402; *Wray* v. *Fairfield Amusement Co.,* 126 Conn. 221 [10 A.2d 600]; *Cincinnati St. Ry. Co.* v. *Hickey,* 29 Ohio App. 399 [163 N.E. 310]) are all from other jurisdictions. They merely invest the trial court with discretion to determine the competency of a witness. Such holding is not contrary to the law of this state. (*Weil* v. *California Bank,* 219 Cal. 538 [27 P.2d 904]; *Mirich* v. *Balsinger,* 53 Cal.App.2d 103 [127 P.2d 639]; *Taylor* v. *Fishbaugh,* 26 Cal.App.2d 300 [79 P.2d 174]; *White* v. *Citizens Nat. T. & S. Bank,* 46 Cal.App.2d 418 [116 P.2d 117]; *Hood* v. *Bekins Van & Storage Co.,* 178 Cal. 150 [172 P. 594].)

██ The tax assessor of Whittier was called by appellants as an expert on values. On voir dire he answered that he had no opinion as to the reasonable market value of the property in 1938. His appraisal for taxation was not evidence of market value. (*Yolo Water & P. Co.* v. *Edmands,* 50 Cal.App. 444, 450 [195 P. 463].) It was not error to exclude his testimony. (*Mirich* v. *Balsinger, supra.*)

██ Appellant Vanderbush offered himself as a witness to prove the value of the property which he had as owner sold in 1937. Former ownership alone does not entitle one to testify as to the value of a property. In order for him to qualify he must demonstrate such familiarity with the land, its uses, and its value as to satisfy the trial judge of his competency.

(See *Sternes* v. *Sutter Butte Canal Co.*, 99 Cal.App. 465 [278 P. 921]; *Westinghouse Air-Brake Co.* v. *City of Pittsburgh*, 316 Pa. 372 [176 A. 13].) He disclosed on his voir dire examination no such knowledge. While the owner may testify as to the value of his property (*Winklemen* v. *Sides*, 31 Cal.App. 2d 387 [88 P.2d 147]) the privilege has not been extended to former owners as such. (*Dexter* v. *Aronson*, 282 Mass. 124 [184 N.E. 455].)

It is contended that the court erred in denying appellants' motion to strike the testimony of respondent's experts on the ground that it contradicted the allegations of the amended complaint. The sole basis of such demand is that while its value on June 24, 1938, was alleged to have been $19,000, the testimony of respondent's expert was that its value at that time was approximately $14,000. We know of no authority requiring any witness to testify that the value of a property is exactly the sum alleged or claimed to be by either litigant. In deriving the value of $19,000 the court necessarily considered all the proof received.

In the absence of prejudicial error it is ordered that the judgment be and the same is affirmed.

Wood, (W. J.), J., and McComb, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 24, 1945. Carter, J., and Schauer, J., voted for a hearing.