[Civ. No. 36543. Second Dist., Div. Four. Dec. 11, 1970.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS,
Plaintiff and Respondent, v.
ZWAANTINA TeVELDE et al., Defendants and Appellants.

## COUNSEL

Milnor E. Gleaves for Defendants and Appellants.

Harry Fenton, Joseph A. Montoya, Richard L. Franck, Robert L. Meyer and Charles E. Spencer, Jr., for Plaintiff and Respondent.

## OPINION

**IRWIN, J.**[*]—This is an appeal in an eminent domain case by defendant property owners upon the issue of severance damages only.[1] The jury rendered its verdict that the remaining property had suffered no severance damage and judgment was entered accordingly.

Respondent acquired approximately 10 acres for the San Gabriel River Freeway across defendants' land consisting of a single parcel, irregular in shape, and containing approximately 100 acres. On the date of value, July 9, 1963, the property was being used as a dairy. As the result of the taking, two separate noncontiguous parcels remained after severance from the larger parcel. Each remaining parcel was also irregular in shape.

The only question for the jury was what amount of severance damages, if any, the owners of these two pieces of remaining land suffered by reason of severance from the portion sought to be condemned and the construction of the improvement in the manner proposed. (Code Civ. Proc., § 1248, subd. 2.) Although there was sharp conflict between the experts on the question of damage, it was agreed that the highest and best use of the property, both before and after the taking as of the date of value, was to hold the property as an investment for future subdivision and residential use within five years, and that the continued use of the remaining parcels for dairy purposes was not seriously impaired pending the eventual subdivision.

Appellants' valuation witness testified that in his opinion the damage by reason of severance was $92,500, based upon loss of access to principal streets, aggravated impairment of shape, the cutting of the property into two noncontiguous parts, the cost of block walls and the loss of privacy

---

[*]Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]In a prior trial the issues of both the value of the land taken and severance damages to the remainder were decided, but that portion of the judgment relating to severance damages was reversed on appeal and remanded for retrial as to that issue only (2d Civ. No. 29676, filed 5/26/67).

to those portions of the two remainders lying adjacent to the new freeway. He was aware of the effect of prospective joinder or assemblage of these remainders with other land for subdivision in the future, but in expressing his opinion he did not consider it as an element affecting severance damage.

Respondent's expert testified that in his opinion the value of the property in the "after" condition was the same as in the "before" condition and that therefore there was no severance damage. He considered the same physical characteristics and other factors included in the testimony of appellants' witness, but was of the opinion these matters, with other factors considered, caused no reduction or diminution in value of the property not taken. In forming his opinion of value, he stated in substance, that because appellants' property both before and after the taking was irregular in shape, a well-informed purchaser buying for its highest and best use, that is, for investment and ultimate subdivision, would consider it logical and practicable to join said property with adjacent land for development and to create a more regularly shaped property. This, he opined, could be accomplished by direct sale to adjacent property owners, by purchase of additional property or by assemblage in a joint venture program with others. He did not state that as of the date of value such purchase or sale was contemplated. He did not know that any ever would occur. He merely testified that this was one of the factors which would influence a well-informed buyer desiring to purchase the property as an investment. There was no indication that as of the date of value or within a reasonable time before or after that date any owner was willing to sell adjacent land at any price nor that anyone wanted to buy appellants' land and assemble it with other property, nor did the witness express an opinion as to the cost or value of other property which might be used for such a purpose.

There was evidence, however, that appellants, in October 1966, did purchase an adjoining piece of property and that in 1968 a buyer did in fact acquire the remainders of appellants' property as well as several others adjoining, in an assemblage of properties. This evidence was received without objection and there was no motion to strike. Later appellants requested the court to give their instruction I, as follows:

"You are instructed that an expert witness, in forming an opinion as to the amount of severance damage, if any, may not base that opinion upon the assumption that there was a possibility, on the date of value, of the joinder of the remaining portions of defendants' property with the lands of other persons.

"You are therefore to consider the question of severance damages only in relation to the two remaining portions of property as they physically

existed after the taking of Parcels 2A and 2B and the construction of the freeway by the plaintiff in this case."

Appellants now contend that the court's refusal to give this instruction was prejudicial error.

Appellants argue that under the law of this state, the possibility of joinder may not be considered in determining the amount of severance damages. We disagree.

Evidence of value in terms of money, which the land would bring for a specific purpose or as a result of a projective plan of development, is not to be considered in determining market value. (*City of Pleasant Hill* v. *First Baptist Church* (1969) 1 Cal.App.3d 384, 409 [82 Cal. Rptr. 1]; *People* ex rel. *Dept. Pub. Wks.* v. *Silveira* (1965) 236 Cal.App. 2d 604, 627 [46 Cal.Rptr. 260].) But, in the instant case we are not confronted with a specific plan, project or development, nor do we find any evidence in the record that respondent's appraiser based his opinion upon the assumption that there actually would be any joinder. It was one of the factors which he considered as having an influence on market value of the remaining property both in the before and in the after condition. It was because of that influence and all of the other factors affecting market value that led to the conclusion that there was no change in the market value of the remainders by reason of the taking and the construction of the proposed improvement.

Diminution or reduction in value is the criterion of severance damages. As stated in *San Bernardino County Flood Control Dist.* v. *Sweet* (1967) 255 Cal.App.2d 889, at p. 904 [63 Cal.Rptr. 640]: "Severance damage is determined by ascertaining the market value of the property not taken as a part of the whole in the before condition and by deducting therefrom the market value of such remainder after the take and the construction of the improvement in the manner proposed by plaintiff. (*People* v. *Hayward Bldg. Materials Co.*, 213 Cal.App.2d 457, 464 [28 Cal.Rptr. 782]; *People* v. *Loop, supra,* 127 Cal.App.2d 786, 799 [274 P.2d 885].)"

The court in *People* v. *Murray* (1959) 172 Cal.App.2d 219, at pp. 228-229 [342 P.2d 485], had this to say: "Appellant argues that it was improper for respondent's expert witnesses, David Cohn and David Simmons, to base their conclusions of value on the assumption that there was a possibility of access being developed at the southern boundary of the property by connecting up to a road developed by the adjacent landowner. There is no merit to this contention. The witness Simmons testified that the southern hilly section of the property was inaccessible for any immediate development and would have to remain undeveloped until the

surrounding area of more suitable lands was developed. The witness did, however, consider the reasonable probable development in the future and attached an appropriate value thereto. The witness Cohn testified that the southern section had no economically feasible access except at the northern boundary of the property, and that the southern portion would remain undevelopable until such time as a connection could be made with the adjoining landowner.

"The record does not indicate that these witnesses valued the property in conjunction with the adjoining property to the south. Rather, they considered the property separately and added an increment of value by considering the future possible development. '[W]here the highest and best use of separate parcels will involve their integrated unitary use, such prospective use may be considered in fixing the value of the property taken if a joinder of the parcels is reasonably practicable, and the nature of the case does not preclude the possibility of a union without the exercise of eminent domain.' (*People* v. *Ocean Shore Railroad,* 32 Cal.2d 406, 424 [196 P.2d 570, 6 A.L.R.2d 1179]; see also *City of Pasadena* v. *Union Trust Co.,* 138 Cal.App. 21 [31 P.2d 463]; *City of Stockton* v. *Ellingwood,* 96 Cal.App. 708 [275 P. 228]; *City of Stockton* v. *Vote,* 76 Cal.App. 369 [244 P. 609].) Even had they proceeded on a theory of 'assemblage,' it would not be error as it was within their proper function as expert witnesses. (*People* v. *Dunn,* 46 Cal.2d 639, 642 [297 P.2d 964].)" The reasoning of this case is applicable here.

We conclude that, under circumstances such as are presented in this case, the prospective joinder of the severed property with other land is one of the factors which a valuation witness properly may consider to determine market value of the remaining property both before and after severance from the part taken, and thereby to express an opinion as to the amount of severance damage, if any. The same factors should be used in determining the market value of the remainders in the before condition and in the after condition as well as for determining the value of the part taken.

In *People* v. *Ocean Shore Railroad* (1948) 32 Cal.2d 406, at page 424 [196 P.2d 570, 6 A.L.R.2d 1179], the court states: "The possibility of joinder of parcels for a specified use is a factor that might be weighed by a prospective purchaser, if the joinder were reasonably practicable, and hence is an element to be considered in determining the value of the property taken, *but it has no bearing on the allowance of severance damages.*" (Italics added.)

Appellants seize upon this last phrase as the sole support for their position in this appeal. We do not construe this statement as one creating a

rule to proscribe consideration of joinder where there is a right to have the amount of severance damage, if any, determined under section 1248, subdivision 2 of the Code of Civil Procedure; that is, where the remaining property is part of a larger parcel and is thereby entitled to have the subject of severance damages considered. The quoted statement has no application when determining the *amount* of damages, if any, to which an owner is entitled by reason of severance. *People* v. *Ocean Shore Railroad, supra,* and other cases cited by appellants, are authority for the proposition that the prospect of joinder in the future may not be considered as creating *a right* to severance damage. We do not believe that the court meant by the emphasized language to state that the value of the part taken should be measured in any different manner than the value of the remainders in the before condition and in the after condition.

The proposed instruction was misleading and tantamount to an instruction to disregard the appraiser's testimony. It was properly refused.

■ Appellants claim their costs on this appeal, even though unsuccessful. In an appeal such as this, where a condemnee is an unsuccessful appellant, the awarding of costs on appeal is a matter within the court's discretion. (*Oakland* v. *Pacific Coast Lumber etc. Co.* (1916) 172 Cal. 332, 334-337 [156 P. 468]; *In re Redevelopment Plan for Bunker Hill* (1964) 61 Cal.2d 21, 68-71 [37 Cal.Rptr. 74, 389 P.2d 538].) In the exercise of that discretion, the request is denied and costs are awarded to respondent.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied December 31, 1970, and appellants' petition for a hearing by the Supreme Court was denied February 3, 1971.